2016R00007/DAW/JNM

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 16- C R. 56 2 (SRC ) |
| | : |
| v. | : |
| | : 18 U.S.C. §§ 371, 1343, 1346, |
| AHMED EL SOURY | :              1952(a)(1)&(3), 2 |
| | : 42 U.S.C. § 1320a-7b(b)(1)(A) |

### I N D I C T M E N T

The Grand Jury in and for the District of New Jersey,

sitting at Newark, charges:

**COUNT ONE**
(Conspiracy to Violate the Federal
Anti-kickback Statute and Travel Act
and to Defraud Patients of Honest Services)

1.     Unless otherwise indicated, at all times relevant

to this Indictment:

a.     Biodiagnostic Laboratory Services, LLC

("BLS") was a clinical blood laboratory headquartered in

Parsippany, New Jersey that, among other things, performed tests

on the blood specimens of patients referred to BLS by medical

doctors ("Physicians"), and then billed others for those tests

and related services.

b.     The Medicare Program ("Medicare") was a

federal program that provided free or below-cost health care

- 1 -

benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b). Individuals who receive benefits under Medicare are commonly referred to as "Beneficiaries."

c.     The Medicare Part B program was a federally funded supplemental insurance program that provided supplementary Medicare insurance benefits for individuals aged sixty-five or older, and certain individuals who are disabled. The Medicare Part B program paid for various medical services for Beneficiaries, including blood tests and related services.

d.     BLS was an approved Medicare provider, and Medicare paid BLS for performing blood tests and related services performed for Beneficiaries who had been referred to BLS by Physicians participating in Medicare.

e.     BLS billed, and was paid by, various private health care insurance companies (collectively, the "Private Insurers") in the business of providing health care insurance to individuals and entities under various insurance policies (the "Insureds"), pursuant to which the Private Insurers paid BLS for blood tests and related services performed for Insureds who had been referred to BLS by Physicians.

- 2 -

f.   BLS paid sales representatives a commission based on the amount of revenue received by BLS from Medicare and the Private Insurers for the performance of blood tests and related services performed on blood specimens referred to BLS by Physicians the sales representatives recruited or serviced.

g.   David Nicoll, who is a co-conspirator not charged herein, was an owner and the President of BLS and generally exercised control over the operations of BLS.

h.   Scott Nicoll, who is a co-conspirator not charged herein, was employed by and acted on behalf of BLS. In addition, beginning in or about 2010, Scott Nicoll caused the formation of an entity called Nicoll Brothers Consulting, LLC.

i.   Cliff Antell, who is a co-conspirator not charged herein, was associated with and acted on behalf of BLS in a marketing capacity. In addition, beginning in or about 2010, Cliff Antell caused the formation of an entity called Browns Dock Consulting, LLC ("Browns Dock").

j.   Douglas Hurley, who is a co-conspirator not charged herein, was employed by and acted on behalf of BLS as a sales representative. In addition, beginning in or about 2010, Douglas Hurley caused the formation of an entity called Shanti Consulting, LLC ("Shanti").

### The BLS Bribery Scheme

2.    Beginning prior to March 2006 and continuing through in or about April 2013, BLS routinely paid Physicians bribes to induce them to refer the blood specimens of their Medicare and Private Insurer patients to BLS for testing.

3.    During the BLS bribery scheme, BLS bribed Physicians practicing medicine in New Jersey and in New York. To generate funds to pay bribes in a given month, BLS relied upon and used the monies generated by patient blood specimen referrals from Physicians, wherever located, that had been obtained in prior months.

### Defendant AHMED EL SOURY

4.    At all times relevant to this Indictment, the defendant, AHMED EL SOURY, was a licensed medical doctor who practiced medicine in Richmond County, New York. As a physician, defendant AHMED EL SOURY owed a fiduciary duty to his patients. In addition, defendant AHMED EL SOURY had a duty of honest services to his patients that included the duty to refrain from accepting, or agreeing to accept, bribes and kickbacks offered in exchange for patient blood specimen referrals.

5.    From at least as early as in or about March 2011, defendant AHMED EL SOURY agreed with one or more persons employed by and/or acting on behalf of BLS to refer the blood

- 4 -

specimens of his Medicare and Private Insurer patients to BLS for testing in exchange for monthly bribe payments.

6.    From at least as early as in or about March 2011 through April 2013, defendant AHMED EL SOURY accepted cash bribes in exchange for referring the blood specimens of his Medicare and Private Insurer patients to BLS.  Defendant AHMED EL SOURY did not advise his patients that he was receiving bribes in exchange for referring their blood specimens to BLS.

7.    The referrals from defendant AHMED EL SOURY enabled BLS to collect more than $650,000 from Medicare and the Private Insurers.

8.    From at least as early as in or about March 2011 through in or about April 2013, in the District of New Jersey, and elsewhere, defendant

AHMED EL SOURY

did knowingly and intentionally conspire and agree with David Nicoll, Scott Nicoll, Cliff Antell, Doug Hurley, and others to commit offenses against the United States, that is:

a.    to willfully solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, from BLS through one or more co-conspirators, in order to induce defendant AHMED EL SOURY to refer patients and cause the

- 5 -

referral of patients to BLS for the furnishing and arranging of items and services, that is, the referral of patient blood specimens to BLS for testing and related services, for which payment was made in whole or in part under a Federal health care program, that is, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A); and

    b. to knowingly and intentionally travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, that is, commercial bribery, contrary to N.J.S.A. § 2C:21-10 and Title 18, United States Code, Section 1952(a)(1)and (a)(3) and, thereafter, to perform acts to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity, contrary to Title 18, United States Code, Sections 1952(a)(1) and (3); and

    c. to knowingly and intentionally devise a scheme and artifice to defraud AHMED EL SOURY's patients of their right to his honest services as their physician and to transmit and cause to be transmitted by means of wire, radio,

- 6 -

and television communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Sections 1343 and 1346.

## Object of the Conspiracy

9.    The object of the conspiracy was to illegally generate large sums of money for defendant AHMED EL SOURY, co-conspirators David Nicoll, Scott Nicoll, Cliff Antell, Douglas Hurley, and others by exchanging concealed bribes for referrals of patient blood specimens that generated revenue for BLS.

## Manner and Means of the Conspiracy

10.    The manner and means by which defendant AHMED EL SOURY, co-conspirators David Nicoll, Scott Nicoll, Cliff Antell, Douglas Hurley, and others sought to accomplish the object of the conspiracy included, among other things, the following:

a.    Beginning in or around July 2010, certain of the bribes paid to Physicians including defendant AHMED EL SOURY began to be paid by BLS through sham LLC entities, such as Browns Dock and Shanti, that were formed by co-conspirators to further disguise the bribes being paid by BLS.

b.    It was further part of the conspiracy that, from in or about March 2011 through in or about April 2013, one or more co-conspirators offered, and defendant AHMED EL SOURY

- 7 -

accepted, cash bribes of approximately $2,000 to $3,000 per month to induce the referral of patient blood specimens to BLS. The patient blood specimens that AHMED EL SOURY referred to BLS were driven from AHMED El SOURY's medical practice in New York to the BLS laboratory in New Jersey for testing.

              c.    It was further part of the conspiracy that the cash bribes paid to defendant AHMED EL SOURY on behalf of BLS totaled approximately $65,000 and were driven from New Jersey by BLS representatives to defendant AHMED EL SOURY's medical practice in New York.

              d.    It was further part of the conspiracy that, in or about February 2012, defendant AHMED EL SOURY solicited, and one or more coconspirators agreed to pay, an increase in the cash bribes paid to defendant AHMED EL SOURY for having persuaded another health care provider to also refer patient blood samples to BLS.

              e.    It was further part of the conspiracy that defendant AHMED EL SOURY maintained periodic contact with one or more co-conspirators through interstate communications, including telephone and text message.

              f.    It was further part of the conspiracy that various of the co-conspirators made efforts to track, by month: (i) the monies paid as bribes to defendant AHMED EL SOURY;

- 8 -

(ii) the blood tests defendant AHMED EL SOURY caused to be ordered and referred to BLS; and (iii) the revenue those blood tests generated for BLS.

Overt Acts

11.    In furtherance of the conspiracy and in order to effect the objects thereof, defendant AHMED EL SOURY and his co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a.    In or about March 2011, AHMED EL SOURY accepted a cash bribe funded by and paid at the direction of BLS.

b.    On or about March 29, 2011, defendant AHMED EL SOURY caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

c.    On or about May 6, 2011, BLS received approximately $250 from Medicare via an interstate bank wire for patient blood tests ordered by AHMED EL SOURY and processed by BLS, as referenced in Paragraph 11(b) above.

d.    In or about January 2012, AHMED EL SOURY accepted a cash bribe funded by and paid at the direction of BLS.

- 9 -

e.    On or about January 30, 2012, defendant AHMED EL SOURY caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

f.    On or about February 22, 2012, BLS received approximately $1,500 from a private insurance company via an interstate bank wire for patient blood tests ordered by AHMED EL SOURY and processed by BLS, as referenced in Paragraph 11(e) above.

g.    In or about April 2012, AHMED EL SOURY accepted a cash bribe funded by and paid at the direction of BLS.

h.    On or about May 10, 2012, defendant AHMED EL SOURY caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

i.    On or about June 5, 2012, BLS received approximately $250 from Medicare via an interstate bank wire for patient blood tests ordered by AHMED EL SOURY and processed by BLS, as referenced in Paragraph 11(h) above.

j.    On or about June 9, 2012, defendant AHMED EL SOURY caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

k.   In or about July 2012, AHMED EL SOURY accepted a cash bribe funded by and paid at the direction of BLS.

l.   On or about July 13, 2012, defendant AHMED EL SOURY caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

m.   On or about August 7, 2012, BLS received approximately $550 from Medicare via an interstate bank wire for patient blood tests ordered by AHMED EL SOURY and processed by BLS, as referenced in Paragraph 11(l) above.

n.   On or about August 14, 2012, defendant AHMED EL SOURY caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

o.   On or about August 17, 2012, defendant AHMED EL SOURY caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

p.   In or about September 2012, AHMED EL SOURY accepted a cash bribe funded by and paid at the direction of BLS.

q.   On or about September 28, 2012, BLS received approximately $550 from Medicare via an interstate bank wire for patient blood tests ordered by AHMED EL SOURY and processed by BLS, as referenced in Paragraph 11(n) above.

- 11 -

r.   On or about November 27, 2012, defendant AHMED EL SOURY caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

s.   On or about January 2, 2013, BLS received approximately $800 from Medicare via an interstate bank wire for patient blood tests ordered by AHMED EL SOURY and processed by BLS, as referenced in Paragraph 11(r) above.

t.   On or about January 11, 2013, defendant AHMED EL SOURY caused patient blood tests to be ordered and the resulting blood specimens to be referred to BLS.

u.   In or about February 2013, AHMED EL SOURY accepted a cash bribe funded by and paid at the direction of BLS.

v.   On or about March 14, 2013, BLS received approximately $125 from Medicare via an interstate bank wire for patient blood tests ordered by AHMED EL SOURY and processed by BLS, as referenced in Paragraph 11(s) above.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FOUR

(Illegal Remuneration in Violation of
the Federal Anti-Kickback Statute)

1.    Paragraphs 1 through 7 and 9 through 11 of Count
1 of this Indictment are hereby incorporated and realleged as if
fully set forth herein.

2.    On or about the dates set forth below, in the
District of New Jersey, and elsewhere, defendant

AHMED EL SOURY

did knowingly and willfully solicit and receive remuneration,
directly and indirectly, overtly and covertly, in cash and in
kind, that is, kickbacks and bribes, from BLS, in order to
induce defendant AHMED EL SOURY to refer patients and cause the
referral of patients to BLS for the furnishing and arranging for
the furnishing of items and services, that is, the referral of
patient blood specimens to BLS for testing and related services,
for which payment was made in whole or in part under a Federal
health care program, that is, Medicare, as follows:

| Count | Approximate Date of Kickback/Bribe |
|-------|-----------------------------------|
| TWO   | January 2012                      |
| THREE | September 2012                    |
| FOUR  | February 2013                     |

- 13 -

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNTS FIVE THROUGH SEVEN
(Use of the Mail and Facilities in Interstate Commerce
and Interstate Travel to Promote, Carry On
and Facilitate Commercial Bribery)

1.    Paragraphs 1 through 7 and 9 through 11 of Count 1 of this Indictment are hereby incorporated and realleged as if fully set forth herein.

2.    On or about the dates set forth below, in the District of New Jersey, and elsewhere, defendant

AHMED EL SOURY

did knowingly travel in and use the mail and facilities in interstate commerce and cause the travel in and use of the mail and facilities in interstate commerce with the intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, that is, commercial bribery contrary to N.J.S.A. § 2C:21-10, and, thereafter, did perform and attempt to perform an act to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity as follows:

- 15 -

| Count | Approximate Date | Travel or Use of Mail or Facility in Interstate Commerce | Acts Performed Thereafter |
|-------|------------------|----------------------------------------------------------|---------------------------|
| FIVE | February 22, 2012 | Interstate Wire, as set forth in Paragraph 11(f) of Count One | The Acts Set Forth in Paragraphs 11(g) and 11(h) of Count One |
| SIX | June 5, 2012 | Interstate Wire, as set forth in Paragraph 11(i) of Count One | The Acts Set Forth in Paragraphs 11(j) and 11(k) of Count One |
| SEVEN | August 7, 2012 | Interstate Wire, as set forth in Paragraph 11(m) of Count One | The Acts Set Forth in Paragraphs 11(n) and 11(o) of Count One |

All in violation of Title 18, United States Code, Section 1952(a)(1) and (3), and Title 18, United States Code, Section 2.

**COUNTS EIGHT THROUGH TEN**

(Scheme to Defraud Patients of Honest Services by
Defendant AHMED EL SOURY Accepting Concealed Bribes)

1.    Paragraphs 1 through 7 and 9 through 11 of Count
1 of this Indictment are hereby incorporated and realleged as if
fully set forth herein.

2.    At all times relevant to Counts Eight through Ten
of this Indictment, defendant AHMED EL SOURY's patients had an
intangible right to his honest services as their physician.
Defendant AHMED EL SOURY owed to his patients a duty to refrain
from seeking and receiving bribes and kickbacks in exchange for
defendant AHMED EL SOURY's actions as their physician.

3.    From at least as early as in or about March 2011
through in or about April 2013, in the District of New Jersey,
and elsewhere, defendant

AHMED EL SOURY,

with others, knowingly and intentionally did devise and intend
to devise a scheme and artifice to defraud defendant AHMED EL
SOURY's patients of the right to defendant AHMED EL SOURY's
honest services as their physician.

3.    The object of this scheme and artifice to defraud was
for defendant AHMED EL SOURY and others to deprive defendant
AHMED EL SOURY's patients of the honest services of defendant
AHMED EL SOURY by defendant AHMED EL SOURY accepting and
agreeing to accept concealed and undisclosed bribes and

- 17 -

kickbacks from BLS, in exchange for defendant AHMED EL SOURY's referral of patient blood specimens to BLS.

4.    To carry out the scheme and to effect its unlawful object, defendant AHMED EL SOURY, and others, engaged in a number of means and methods, including those referred to in Paragraphs 1 through 7 and 9 through 11 of Count One, among others, as described below.

- 18 -

5.    On or about the dates set forth below, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendant

AHMED EL SOURY,

and others, knowingly and intentionally transmitted and caused to be transmitted in interstate commerce by means of wire, radio, and television communication, certain writings, signs, signals, pictures, and sounds, as set forth below:

| Count | Approximate Date | Wire Transmission in Interstate Commerce |
|-------|------------------|------------------------------------------|
| EIGHT | September 28, 2012 | Medicare Payment to BLS via interstate bank wire, as set forth in Paragraph 11(q) of Count One |
| NINE | January 2, 2013 | Medicare Payment to BLS via interstate bank wire, as set forth in Paragraph 11(s) of Count One |
| TEN | March 14, 2013 | Medicare Payment to BLS via interstate bank wire, as set forth in Paragraph 11(v) of Count One |

In violation of Title 18, United States Code, Sections 1343 and 1346, and Title 18, United States Code, Section 2.

- 19 -

## FORFEITURE ALLEGATION AS TO COUNT ONE

1.    As a result of committing the conspiracy offense in violation of 18 U.S.C. § 371 as alleged in Count One of this Indictment, defendant AHMED EL SOURY shall forfeit to the United States:

> (a)    Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the conspiracy to violate 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in Count One of this Indictment;
>
> (b)    Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the conspiracy to violate 18 U.S.C. § 1952(a)(1) and (3) as alleged in Count One of this Indictment; and
>
> (c)    Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the conspiracy to violate 18 U.S.C. § 1343 and 1346 as alleged in Count One of this Indictment;

And all property traceable to such property.

## FORFEITURE ALLEGATION AS TO COUNTS TWO THROUGH FOUR

2.    As a result of committing the offenses in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in Counts Two, Three and Four of this Indictment, defendant AHMED EL SOURY shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offenses in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) as alleged in such Counts, and all property traceable to such property.

## FORFEITURE ALLEGATION AS TO COUNTS FIVE THROUGH SEVEN

3.   As a result of committing the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3), as alleged in Counts Five, Six, and Seven of this Indictment, defendant AHMED EL SOURY shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses in violation of 18 U.S.C. § 1952(a)(1) and (3) as alleged in such Counts, and all property traceable to such property.

- 22 -

**FORFEITURE ALLEGATION AS TO COUNTS EIGHT THROUGH TEN**

4. As a result of committing the offense in violation of 18 U.S.C. §§ 1343 and 1346, as alleged in Counts Eight, Nine, and Ten of this Indictment, defendant AHMED EL SOURY shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses in violation of 18 U.S.C. § 1343 as alleged in such Counts, and all property traceable to such property.

- 23 -

## SUBSTITUTE ASSETS PROVISION
## APPLICABLE TO ALL FORFEITURE ALLEGATIONS

    5.    If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

> (a)    cannot be located upon the exercise of due
>        diligence;
>
> (b)    has been transferred or sold to, or deposited
>        with, a third person;
>
> (c)    has been placed beyond the jurisdiction of the
>        Court;
>
> (d)    has been substantially diminished in value; or
>
> (e)    has been commingled with other property which
>        cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. §

853(p) (as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C.

§ 2461(c)), to seek forfeiture of any other property of said

defendant up to the value of the above forfeitable property.


A TRUE BILL.


FOREPERSON


PAUL J. FISHMAN
United States Attorney


- 24 -

CASE NUMBER: *16-CR-562 (SRC)*

# United States District Court
## District of New Jersey

### UNITED STATES OF AMERICA

v.

### AHMED EL SOURY

# INDICTMENT FOR

18 U.S.C. §§ 371, 1343, 1346, 1952(a)(1)&(3), 2
42 U.S.C. § 1320a-7b(b)(1)(A)

A True Bill.

_____
Foreperson

### PAUL J. FISHMAN
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

JOSEPH N. MINISH & DANIELLE ALFONZO WALSMAN
*ASSISTANT U.S. ATTORNEYS*
*(973)645-2700*

**USA-48AD 8**
**(Ed. 1/97)**